United States District Court
Southern District of Texas
ENTERED

FEB 0 3 2010

Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LAMAR TEXAS LIMITED PARTNERSHIP, § § § | | |
| Plaintiff, § § | | |
| v. § § | CIVIL ACTION NO. B-08-115 | |
| THE CITY OF PORT ISABEL, TEXAS, § § | | |
| Defendant. § | | |

## OPINION AND ORDER

BE IT REMEMBERED, that on February __, 2010, the Court considered the parties responses to questions posed by the Court in its November 9, 2009 Opinion and Order, Dkt. Nos. 33, 36.

### I. Background

A more complete summary of the factual and procedural background can be found in this Court's November 9, 2009 Opinion and Order granting partial summary judgment in favor of Defendant. *See* Dkt. No. 31 at 1–4. The Court will recite an abbreviated summary of the case's current posture.

The Court must decide whether to exercise supplemental jurisdiction over the state-law causes of action remaining in this case. According to the complaint and summary judgment evidence, the dispute in this case centers on the City of Port Isabel's issuance of a stop-work order on November 16, 2007. Dkt. No. 21 at 4. That order halted construction on a large, commercial sign owned[1] by Plaintiff Lamar Texas, L.P. ("Lamar"). Lamar had maintained its sign as a nonconforming use under the City's sign ordinance which provides that a sign predating the ordinance's enactment[2] is permitted so long as, among other things, "the sign is not

---

[1] The sign in question is situated on land for which Lamar holds a lease and was constructed by Lamar's predecessor-in-interest in 1967. *See* Dkt. No. 1 at 3; Dkt. No. 6 at 2.

[2] The parties have not provided a copy of the ordinance with its precise effective date, but they agree that it is applicable to this dispute.

removed or damaged by natural causes to an extent exceeding fifty percent (50%) of its replacement value." Dkt. No. 23 Ex. A at 1; Dkt. No. 23 at 2–3. The City halted construction because it believed that Lamar had violated this provision. *See* Dkt. No. 24 at 3.

After sending a demand letter, Lamar filed this lawsuit, alleging that the City's stop-work order violated provisions of Texas law and the due process clause of the Constitutions of the United States and the State of Texas. *See* Dkt. No. 1 at 8. On November 9, 2009, this Court granted partial summary judgment in favor of Port Isabel and dismissed all of Plaintiffs' constitutional claims. *See* Dkt. No. 31 at 14. Lamar's remaining state-law causes of action ask the Court to (1) declare that Lamar did not violate the City's sign ordinance, *see* Dkt. No. 1 at 13, or (2) apply the Texas doctrine of equitable estoppel. *See id.* at 14. The Court did not address the parties' summary judgment motions on these claims, however. *See* Dkt. No. 31 at 13. Instead, noting the Fifth Circuit's "general rule" that state-law claims should be dismissed when the federal-law claims to which they are pendent are dismissed, the Court ordered the parties to brief the following two questions:

> 1. What Texas authority provides Plaintiff with its remaining claims for relief and what limitations period applies to those claims?
> 2. Should this Court exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for relief under 28 U.S.C. § 1367?

Dkt. No. 31 at 14; *see also id.* at 13–14 (citing Premiere Network Servs., Inc. v. SBC Commc'ns, Inc., 440 F.3d 683, 692 (5th Cir. 2006)).

The parties have responded. Dkt. Nos. 33, 36. They agree, as does the Court, that Texas's residual four-year statute of limitations applies to Lamar's remaining state-law claims which were brought under the Texas Declaratory Judgment Act's authority to bring an action challenging the construction or validity of an ordinance, Tex. Civ. Prac. & Rem. Code § 37.004(a) (Vernon 2009); *see also id.* § 16.051 (residual statute of limitations); Dkt. No. 33 at 2; Dkt. No. 36 at 2. The parties also agree that this Court should exercise supplemental jurisdiction in this case for

reasons articulated by Lamar. *See* Dkt. No. 33 at 3; Dkt. No. 36 at 3. They argue that this case presents no novel issues of state law for the court to decide and that, given the extensive briefing of the motions for summary judgment and two years of discovery in this case, judicial economy and other supplemental jurisdiction factors weigh in their favor. *See* Dkt. No. 33 at 3–4.

## II. Supplemental Jurisdiction

This Court begins, as it must, with the axiom that federal courts are courts of limited jurisdiction and require statutory or constitutional authorization to exercise jurisdiction over a case. Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996) (citations omitted). From this axiom flows the principle that "[t]he parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived." *Id.* (citing FED. R. CIV. P. 12(h)(3); City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 76 (1941)); *see also* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived"). The Court "must always be vigilant to ensure that [it has] subject matter jurisdiction," Ceres Gulf v. Cooper, 957 F.2d 1199, 1207 n.16 (5th Cir. 1992), and the Court must consider its subject-matter jurisdiction whenever it is "fairly in doubt." Iqbal, 129 S. Ct. at 1945 (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006)); *see also* Lewis v. Hunt, 492 F.3d 565, 568 (5th Cir. 2007).

This Court's supplemental jurisdiction statutorily extends to state-law claims that "form part of the same case or controversy" as federal-law claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a) (2009). However, a district court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the [state-law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c); Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc., 554 F.3d 595, 601–02 n.3 (5th Cir. 2009). The Court has dismissed all federal-law claims over which it has original jurisdiction, *see* Dkt. No. 31 at 9–13, and the Court therefore has discretion to dismiss the remaining state-law claims in this case. 28 U.S.C. § 1367(c)(3) (2009). Lamar contends that the Court should not exercise this discretion.

In the Fifth Circuit, the "general rule" is that state-law claims should be dismissed after all of the federal-law claims to which they are pendant have been dismissed. *E.g.*, Premiere Network Servs., Inc. v. SBC Commc'ns, Inc., 440 F.3d 683, 692 (5th Cir. 2006) (quoting Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992)). Despite this "general rule," the Court's decision to exercise supplemental jurisdiction after all federal-law claims have been dismissed is ultimately "purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862 (2009); *see also* Batiste v. Island Records Inc., 179 F.3d 217, 227 (5th Cir. 1999) (citing McClelland v. Gronwaldt, 155 F.3d 507, 519 (5th Cir. 1998), *overruled on other grounds sub nom.* Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003) (en banc) ("general rule" is "neither mandatory nor absolute"). Deciding whether to exercise supplemental jurisdiction requires the Court to balance the four Section 1367(c) factors set forth above with "the relevant factors of judicial economy, convenience, fairness, and comity" outlined in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350–51 (1988). *Batiste*, 179 F.3d at 227. No single factor, however, is dispositive. *Id.* (quoting *McClelland*, 155 F.3d at 519).

Turning first to the Section 1367(c) factors, all of the federal-law claims in this case have been dismissed, 28 U.S.C. § 1367(c)(3) (2009), and, in situations in which all federal-law claims have been dismissed, the federal-law claims "clearly predominate" over the state-law claims. *McClelland,* 155 F.3d at 520; Mendoza v. United States, 481 F. Supp. 2d 643, 647 (W.D. Tex. 2006). Lamar does not argue that any exceptional circumstances exist in this case. *See* Dkt. No. 33 at 3. This factor therefore militates neither for nor against the exercise of jurisdiction. 28 U.S.C. § 1367(c)(4) (2009).

Lamar states without elaboration that this case does not raise a novel or complex issue of state law. *See* Dkt. No. 33 at 4. The parties agree that no court has construed the Port Isabel ordinance at the center of this dispute. *See* Dkt. No. 21 Ex. B at 84:13–22. However, Texas courts regard the rules governing construction of city ordinances as well-settled. *See, e.g.*, City of Coppell v. General Homes Corp., 763 S.W.2d 448, 453 (Tex. App. 1988); Heldt v. S.W. Bell Telephone Co., 482 S.W.2d 352, 357 (Tex. App. 1972). Some courts have followed the suggestion of a leading treatise that the Court "examine[]the difficulty of the state law issue and the amount of state decisional law interpreting the particular provisions." *E.g.*, *Mendoza*, 481 F. Supp. 2d at 646–47 (quoting 13 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3523.1 (2d ed. 2006)). These considerations serve to inform an inquiry into whether the state-law claims "present . . . novel or especially unusual questions which cannot be readily and routinely resolved by the court." Newport Ltd. v. Sears, Roebuck and Co., 941 F.2d 302, 308 (5th Cir. 1991).

This focus on the resolvability of the claims means that the weight of decisional state authority interpreting the particular provision can cut both ways. Sometimes, litigants will argue that the volume of state authority, especially when the state-law issue is unsettled, makes a claim difficult to resolve and that comity counsels in favor of resolution in state court. *See, e.g.*, *Mendoza*, 448 F. Supp. 2d at 646. At other times, the absence of authority construing a provision at issue in a state-law claim cuts against exercising supplemental jurisdiction. *See, e.g.*, Sevin v. Parish of Jefferson, 632 F. Supp. 2d 586, 593–94 (E.D. La. 2008) (declining to exercise supplemental jurisdiction when state supreme court interpreted constitutional provision at issue in claim in only one case and no state courts had interpreted evidentiary privilege at issue). A state-law claim does not always raise a novel or complex issue even when no court has interpreted the provision of state-law at issue in the case. *See* Springtree Apartments, ALPIC v. Livingston Parish Council, 207 F .Supp. 2d 507, 511–13 (M.D. La. 2001). When state law concerning the proper means of construing a provision such as a city ordinance is well-settled,

interpreting that provision does not present a question which cannot be readily and routinely resolved by a federal court. *See id.* at 511 (exercising supplemental jurisdiction to construe city ordinance that had never been construed by state court when rules of construction of ordinances apparently well-settled); *Newport Ltd.*, 941 F.2d at 308. Because neither party argues that the rules governing construction of the ordinance or the application of the equitable doctrine in this case are not well-settled, this case does not raise a novel or complex issue of state law.

In cases that do not raise novel or complex issues of state law, the Fifth Circuit has held that the factors of judicial economy, comity, fairness, and convenience are not offended by an exercise of supplemental jurisdiction. *See Newport Ltd.*, 941 F.2d at 307–08. The Supreme Court has cited a situation in which "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain" as an example of a situation in which these factors favor dismissal. *Cohill*, 484 U.S. at 349 & n.7 (citing Mine Workers v. Gibbs, 383 U.S. 715, 726–27 (1966)) (rejecting rule that state-law claims should always be dismissed if all federal-law claims to which they are pendent are dismissed before trial). As trial approaches and the parties and the Court invest resources in the resolution of the case in the federal forum, these factors counsel increasingly in favor of exercising supplemental jurisdiction. *See id.* at 307–08 & n.8 (holding district court abused discretion by dismissing on eve of trial after "four years of litigation produced 23 volumes and thousands of pages of record, the preparation of a pretrial order exceeding 200 pages, over a hundred depositions, and according to counsel nearly two hundred thousand pages of discovery production"); *Batiste*, 179 F.3d at 227–28 (reversing as abuse of discretion dismissal of state-law claim in case that had "produced more than sixteen volumes of record over the course of three years, numerous depositions and discovery disputes, and significant consideration by the district court of multiple motions to dismiss claims or grant summary judgment"); Smith v. Amedisys Inc., 298 F.3d 434, 447 (5th Cir. 2002) (holding that exercise of supplemental jurisdiction not abuse of discretion when litigation "pending for almost three years, the parties have taken numerous depositions, and

the matter had progressed to the advanced stages of litigation with little left to do before trial"). Though the discovery in this case is not as voluminous as some of the reported cases and the Court has only invested time in resolving the motion for summary judgment, little remains to do in this case to proceed to trial. *See Smith*, 298 F.3d at 447. The Court cannot say that these factors stand in the way of an exercise of supplemental jurisdiction.[3]

Based on the foregoing analysis and after considering all of the relevant factors of 28 U.S.C. § 1367(c) and *Cohill*, this Court exercises supplemental jurisdiction over the remaining state-law claims in this case.

### III. Summary Judgment

Plaintiffs have two state-law claims pending before this Court: (1) a request for a declaration that they did not violate the Port Isabel sign ordinance and (2) that the City was equitably estopped from issuing a stop-work order haulting construction on the Lamar sign. *See* Dkt. No. 1 at 1–2. The Court applies the same standard of review to these claims as that ennunciated in its initial Opinion and Order on the parties' cross-motions for summary judgment. Dkt. No. 31 at 4–5.

#### A. Claims for Declaratory Relief

In its first two requests for relief, Lamar asks the Court to declare that it has not violated the provisions of the ordinance on which the City relied to issue the November 16, 2007 stop-work order, Dkt. No. 21 Ex. B-11, haulting construction on the Lamar sign. *See* Dkt. No. 1 at 7. Though the stop-work order and subsequent legal correspondence do not cite a particular city ordinance, *see* Dkt. No. 21 Ex. B-11 at 1; *id.* Ex. B-13, Port Isabel devotes all of its briefing to the interpretation of Section 20(A)(2) of Port Isabel Ordinance 455. *See* Dkt. No. 24 at 2–8; Dkt. No. 23 at 4. Additionally, David Garza, Jr., the city building inspector who issued the stop-work order, testified in his deposition that he believed that Lamar may have

---

[3] This does not mean that an exercise of supplemental jurisdiction is mandatory in every case that has proceeded to a motion for summary judgment. By their very nature, many such cases will have involved substantial discovery efforts and some judicial consideration of the federal claims raised in such motions. As the Supreme Court has recently stated, the decision to exercise or not to exercise supplemental jurisdiction is "purely discretionary." 129 S. Ct. 1862 (2009).

violated language of that same subsection of Ordinance 455. *See* Dkt. No. 21 Ex. D at 74:13–18. The Court must therefore determine the meaning of Section 20 of Ordinance 455, a portion of which is set forth below, in order to decide whether Lamar's actions violated its provisions. The Ordinance bans billboard signs, *see* Dkt. No. 21 Ex. B-15 § 19(A)(1), but Section 20 provides that:

> (A) Any sign existing lawfully prior to _____ shall be a non-conforming sign and may be continue [sic] in use providing:
> 1. That the sign is maintained in good order and repair at all times.
> 2. That the sign is not removed or damaged by natural causes to an extent exceeding fifty percent (50%) of its replacement value.
> 3. If a non-conforming sign is removed from its original location it may not subsequently be returned to such location and continued in use; nor may it be used elsewhere within the City Limits, unless modified to conform to the requirements of this Chapter.

Dkt. No. 23 Ex. A at 1; Dkt. No. 23 at 2–3.

State rules of statutory interpretation govern the construction of a city ordinance. *See Springtree Apartments*, 207 F. Supp. 2d at 512. Texas courts apply "the same rules of construction as apply to statutes" to ordinances. *City of Coppell*, 763 S.W.2d at 453 (citations omitted). When a court construes a Texas statute, its objective is "to determine and give effect to the legislator's intent." Harris County Hosp. Dist. v. Tomball Regional Hosp., 283 S.W.3d 838, 842 (Tex. 2009) (citing, *inter alia*, State v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002)); *see also City of Coppell*, 763 S.W.2d at 453 (applying this principle to city ordinances). The court must look to the "plain and common meaning of the statute's words" to "determine legislative intent from the statute as a whole." *Tomball Regional Hosp.*, 283 S.W.3d at 842 (citing *Gonzalez*, 82 S.W.3d at 327). However, "if a different, more limited, or precise definition of a term is apparent from the term's use in the context of the statute," the Court will give the term that meaning. In re Hall, 286 S.W.3d 925, 928–29 (Tex. 2009) (citing Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 318

(Tex. 2002)). These propositions lead to the conclusion that a court must consider the purpose of a particular provision of a statute in the overall statutory scheme when construing that provision. 20801, Inc. v. Parker, 249 S.W.3d 392, 396 (Tex. 2008).

Lamar argues that it did not violate the Ordinance for three reasons. *See* Dkt. No. 21 at 5–12. Further background on the undisputed evidence about the Lamar sign may be helpful in understanding these arguments. The parties agree that the Lamar sign stood on the corner of Texas Highway 48 and Route 100 in Port Isabel, Texas. *See* Dkt. No. 21 at 1. The sign's design would likely be familiar to anyone who has seen a typical roadside billboard. A large column supported a metal superstructure on which rested a rectangular placard that presumably displayed commercial messages to passing drivers. *See* Dkt. No. 23 Ex. F1 to F9. This column was embedded in a concrete slab. *See id.*

Lamar first argues that it did not violate the ordinance because only a portion of the sign was even arguably removed or suffered damage, and the Ordinance requires that the entire sign be removed or damaged. *See* Dkt. No. 21 at 5–6. Viewed in the light most favorable to Lamar, the summary judgment evidence tends to show that the construction work involved disconnection of the placard and its supporting metal superstructure from the central concrete column. *See* Dkt. No. 23 Ex. F1 to F9. While the column supporting the sign was not removed, the "sign," as the Ordinance defines it, was. Ordinance 455-C defines the term "sign" as "any object, device, or graphic design for visual communication which is used or intended to attract the attention of the public." Dkt. No. 21 Ex. B-15 § 1(B). The undisputed evidence indicates that the column that remained stationary was intended to support the sign's superstructure and placard and not "used or intended to attract the attention of the public." Rather, it provided physical support to the placard which was the object or visual depiction that was intended to attract the public's attention.

Next, Lamar contends that the undisputed evidence establishes that the costs incurred for the construction work on the sign were the result of Lamar's efforts to

maintain the sign in "good order and repair," not because the sign was "removed or damaged by natural causes." *See* Dkt. No. 21 at 5. Subsection 20(A)(1) of the Ordinance permits a nonconforming sign to remain "provided that . . . the sign is maintained in good order and repair." Dkt. No. 21 Ex. B-15 § 20(A)(1). This paragraph, like each of the three paragraphs of Subsection 20(A), is a condition that must be met in order for a nonconforming sign to continue to be displayed. *See id.* Subsection 20(A) makes no mention of the sign owner's intent. Instead, each of the three conditions in Subsection 20(A) refer only to the state of the sign itself. *See id.* They ask whether "*the sign* is maintained in good order and repair," whether "*the sign* is not removed or damaged . . . ," and whether "*the sign* is not removed from its original location. . ." *Id.* (emphasis added). Thus, even if Lamar's evidence shows that it intended to undertake maintenance to keep the sign in good order and repair, it may still have violated Subsection 20(A)(2) of the Ordinance.[4]

Finally, the parties both ask this Court to grant summary judgment, arguing in turn that the undisputed evidence establishes whether the sign was "removed or damaged . . . to an extent exceeding fifty percent of its replacement value." *See* Dkt. No. 21 at 5–6; Dkt. No. 23 at 4–8. A disputed issue of material fact exists concerning this issue. The City does not seriously dispute that Lamar has produced evidence that the sign's replacement value could be at least $231,386.54. *See* Dkt. No. 21 Ex. G-1; Dkt. No. 24 at 4. This figure comes from an estimate prepared around the time of the issuance of the stop-work order and later confirmed in an

---

[4] Arguably, the requirement that the sign be maintained in good order and repair could be considered redundant of the requirement that the sign not be "removed or damaged by natural causes." After all, when a sign is damaged by natural causes or even completely removed, it may be fairly said not to be in "good order and repair." Similarly, all efforts to repair a sign that has been removed or damaged by natural causes may be said to be efforts to maintain the sign in good order and repair. Reading the "good order and repair" clause this broadly, however, would render the "removed or damaged by natural causes" clause surplusage, and the Court must "try to give effect to all the words of a statute, treating none of its language as surplusage when reasonably possible." Marks v. St. Luke's Episcopal Hosp., ___ S.W.3d ___, 2009 WL 2667801, at *20 (Tex. 2009) (quotations omitted). To give effect to the language of both provisions, Subsections 20(A)(1) and 20(A)(2) of the Ordinance must be understood to prescribe two separate grounds for forfeiture with two distinct causes. Subsection 20(A)(1) prescribes forfeiture of the sign based on any maintenance deficiency regardless of the percentage of the sign's replacement value effected. *See id.* When the sign is "removed or damaged by natural causes" other than those attributable to maintenance deficiencies, Subsection 20(A)(2) only permits forfeiture when the removal or damage reaches a specified percentage of the sign's replacement value. *See id.* The City has only argued that its stop-work order was justified under Subsection 20(A)(2).

expert report by Clay Keeler, one of Lamar's two contractors on this sign project. *Ibid.* This itemized estimate sets a price of $40,000 for "Sub contract installation to drill foundation, set column in concrete, build and erect steel and sign frame, assuming good soil." Dkt. No. 21 Ex. G-1. Taken in the light most favorable to Lamar, a reasonable jury could infer that the sign's replacement cost might exceed the Keeler estimate if a contractor found unfavorable soil.

The City has produced evidence that the amount expended on Lamar's construction work could have totaled as much as $120,000. *See* Dkt. No. 23 at 5. This figure comes from the value entered in a space for "Cost of Construction" on Lamar's August 1, 2007 permit application. Dkt. No. 21 Ex. A1 at 1. Taken in the light most favorable to the City, then, this figure exceeds fifty percent of the Keeler estimate's $231,386.54 replacement cost,[5] or $115,693.27. *See* Dkt. No. 21 Ex. G-1.

However, $110,271.68, the amount Lamar claims it actually spent on construction before the stop-work order, does not exceed fifty percent of the Keeler estimate's replacement cost. *See* Dkt. No. 21 Ex A ¶ 12. The City attacks Lamar's claims to have spent only $110,271.68 as being set forth in an unsupported, self-serving affidavit, *see* Dkt. No. 24 at 3, but Lamar has provided a detailed affidavit of Walter Clint, Lamar's real estate manager, in which he explains exactly how he reached $110,271.68. Dkt. No. 25 Ex. H. To this affidavit, Lamar attaches nine invoices and cancelled checks which, taken in the light most favorable to Lamar, tend to corroborate the affidavit's calculations and method. *See id.* Ex. H1–H9. While some of these figures involve estimates of percentages attributable to the particular construction work, the Court cannot say that a jury would be unreasonable in crediting these estimates or the total value as the sign's replacement value if it were to take the evidence in the light most favorable to Lamar. S*ee ibid.* The Court thus concludes that a genuine dispute over an issue of

---

[5] The City briefly mentions a replacement value as low as approximately $208,000. *See* Dkt. No. 23 at 7. This number can be reached by subtracting the cost of sales tax from the Keeler estimate. *See id.* The City does not argue that a reasonable jury could credit this value, however, and only uses it to argue that another estimate introduced by a different contractor duplicated work described in the Keeler estimate. *See id.* at 7.

material fact exists concerning whether or not the Lamar sign was "removed or damaged by natural causes to an extent exceeding fifty percent of its replacement value." Dkt. No. 21 Ex. B-15.

### B. Claim for Equitable Relief

Lamar's fifth and final claim for relief invokes the Texas doctrine of equitable estoppel. *See* Dkt. No. 1 at 12–13. Lamar argues that right and justice require that the City be estopped from enforcing the Ordinance against it because the City approved the building permit for the Lamar sign, and Lamar never deviated from the proposed construction plan described in the permit application. *See* Dkt. No. 21 at 12. Both parties argue that the Court should reach and decide this issue on summary judgment. *See* Dkt. No. 21 at 12–14; Dkt. No. 23 at 12–13. The Court's determination that summary judgment is not warranted on Lamar's claims for declaratory relief, however, raises an important question of equity jurisdiction.

In Texas as in other jurisdictions, "[t]he inadequacies of the remedy at law are both the foundation of and conversely a limitation on equity jurisdiction." Cardinal Health Staffing Network, Inc. v. Bowen, 106 S.W.3d 230, 235 (Tex. App. 2003) (quoting Sisco v. Hereford, 694 S.W.2d 3 (Tex. App. 1984)) (brackets omitted). A court should not grant an equitable remedy when "an adequate and complete remedy at law is provided." *Id.* (quoting Rogers v. Daniel Oil & Royalty Co., 110 S.W.2d 891, 894 (Tex. 1937)); *see also* United States v. Navarro, 429 F.2d 928, 931 (5th Cir. 1970) ("It is elementary that a court of equity should not act where there is an adequate remedy at law.").

In this case, the remedies remaining to Plaintiff involve only claims for declaratory relief, not damages. In *Sisco*, 694 S.W.2d 3, plaintiffs also brought claims for a declaratory judgment and injunctive relief; they sought a declaration that an implied easement had been created across a tract of land, *see id.* at 5, or alternatively equitable relocation of an existing easement to a more convenient location. *See id.* at 7. A jury found that plaintiffs' existing easement would permit them ingress and egress to their estate. *Id.* The Texas Court of Appeals reasoned that this finding established that the plaintiffs had a "complete, practical, and

adequate remedy at law" because they could receive a declaration that they were entitled to use their existing easement. *Id.* In this case, should a jury find that Lamar did not violate the Ordinance, a declaration to that effect would provide them with a complete, practical, and adequate remedy. *See id.* at 7 (citing Lee v. Bowles, 397 S.W.2d 923, 926 (Tex. App. 1965)). Whether the Court granted Lamar equitable or declaratory relief, Lamar would be put in the same position. Neither party has produced evidence on summary judgment to the contrary.

The Court concludes that it lacks jurisdiction to grant equitable relief because a disputed issue of material fact remains concerning a claim for declaratory relief. If granted, the declaratory remedy would provide Lamar with a complete, practical, and adequate remedy at law. *See Cardinal Health Staffing Network*, 106 S.W.3d at 235.

## IV. Conclusion

For the foregoing reasons, the Court exercises supplemental jurisdiction over the remaining state-law claims in this matter. The Court **DENIES IN PART** the remainder of Plaintiff's Motion for Summary Judgment, Dkt. No. 21, and Defendant's Motion for Summary Judgment. Dkt. No. 23.

DONE at Brownsville, Texas, on February 3, 2010.

Hilda G. Tagle
United States District Judge